UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL DYE #173569,

    Plaintiff,                        CIVIL ACTION NO. 09-14545

    v.                               DISTRICT JUDGE BERNARD A. FRIEDMAN

JODI DEANGELO, RAYMOND       MAGISTRATE JUDGE MARK A. RANDON
BOOKER, WILLIAM RAY,
MICHAEL NOWAK and
CHRIS CRYSLER,

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 19)

**I. INTRODUCTION**

Plaintiff Paul Dye, a Michigan state prisoner proceeding *pro se*, brought this 42 U.S.C. § 1983 action alleging that staff members at the Ryan Road Correctional Facility ("RRF") violated his rights under the United States Constitution, state law and Michigan Department of Corrections ("MDOC") policy. Presently before the Court is the second motion for summary judgment of Defendants Raymond Booker (the Warden), Jodi DeAngelo (the Warden's former Administrative Assistant), William Ray, (the former Assistant Deputy Warden), Michael Nowak (the Transfer Coordinator/Assistant Resident Unit Supervisor ("ARUS")) and Chris Crysler (the former MDOC Correctional Facilities Administration ("CFA") Classification Specialist)

-1-

(collectively "Defendants") (Dkt. No. 13).[1]  The instant motion seeks dismissal of Dye's claims on five grounds: (1) that he failed to state a claim of retaliation with respect to his transfer from one correctional facility to another, both having the same security level; (2) that he failed to state a claim for interference with access to the courts; (3) that he failed to allege the personal involvement of Warden Booker in any purported constitutional violation; (4) that his claims against Defendants are precluded by qualified immunity; and (5) that the Court should decline to exercise jurisdiction over his state claims.  The matter was referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and has been fully briefed.[2] (Dkt. Nos. 19, 26)  Having reviewed these briefs and the accompanying exhibits, for the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' second motion for summary judgment be **GRANTED** and Plaintiff's lawsuit be **DISMISSED** in its entirety.

## II. FACTS

### A. Dye's Complaint Allegations

Dye is currently serving his twentieth year of a life sentence for first-degree murder, second-degree murder and two counts of felony firearm. (Dkt. No. 17, Ex. F)  As alleged by Dye in his amended complaint, the salient facts relating to the instant motion are these: shortly after arriving at RRF in September of 2006, Dye was elected Prisoner Representative ("PR") for his housing unit and, thereby, became a member of the Warden's Forum. (Dkt. No. 10, ¶9)  During

---

[1] On July 22, 2010, the district court adopted the undersigned's report and recommendation, which dismissed a portion of Dye's retaliation claim against DeAngelo and any claims against Defendants in their official capacity. (Dkt. No. 34)

[2] Dye's response also included a Rule 56(f)(2) request for continuance that should be denied because the undersigned finds that additional discovery would not change the outcome of this report and recommendation.

this time, Defendant Booker served as RRF's Warden and DeAngelo, an Administrative Assistant, was Booker's Liaison to the Forum.

Dye was immediately elected Chairman of the Warden's Forum and, in that capacity, held weekly meetings with other PRs to discuss and determine which concerns should be submitted as agenda items for the next monthly meeting with the Warden. *Id*. at ¶¶9, 11. Dye alleges that following MDOC policy, the written agenda would be presented at least three days prior to the next scheduled monthly meeting with the Warden (*Id.* at ¶11), but DeAngelo "demanded" that Dye submit the November 2006 agenda two weeks before the scheduled meeting. *Id*. at ¶17. Dye claims that he submitted the November agenda within the two-week deadline. *Id.* at 18.

On November 27 and 28, 2006, Dye claims that he had a meeting with DeAngelo to discuss the agenda and DeAngelo agreed to attempt to resolve any outstanding issues before the scheduled November 30, 2006 Forum meeting. *Id.* at ¶¶19-20. Dye alleges that, at these meetings, DeAngelo was accompanied by McNeal-Bey, another prisoner selected by DeAngelo to be the Warden's Forum Secretary contrary to MDOC policy (which requires an election). *Id*. at ¶19. On November 29, 2006, Dye alleges that DeAngelo told him "that she would not allow him to present any of the Forum's New Business agenda items to the Warden." *Id*. at ¶ 24. And, after Dye indicated he would conduct an election for the position of Forum Secretary, DeAngelo responded, "[w]e'll see about that. You will be lucky to still be in the lower peninsular after today!" *Id.* at ¶¶28-29. Dye alleges that he was prevented from attending the November 30, 2006, Warden's Forum meeting by a Resident Unit Officer ("RUO") at the direction of DeAngelo. *Id.* at ¶32. Dye further alleges that DeAngelo also retaliated against him by

-3-

removing him from the Warden's Forum without due process, and by causing him to be transferred from RRF to the Thumb Correctional Facility ("TCF") (where he is farther away from his family members).

Dye alleges that he informed Warden Booker of DeAngelo's "inappropriate threats and policy violations," in writing, and requested his intervention. *Id.* at ¶ 40-41. Dye claims that Warden Booker failed to protect him from the retaliation by DeAngelo, and that Warden Booker gave "tacit or explicit" approval to *DeAngelo's decision* to transfer him to TCF. *Id.* at ¶ 42-43.

Dye claims that Nowak prepared the Transfer Order ("T.O."), relocating him to TCF. *Id* at ¶ 49. Dye alleges that on the T.O., Nowak wrote that the transfer was "requested by RRF SCC [Security Classification Committee]," even though no SCC proceeding was conducted at RRF in 2006. *Id*. at ¶¶ 49-50. Dye further alleges that Ray was aware that there was no basis to transfer him but still approved "implementation of the T.O." *Id*. at ¶ 54. Finally, Dye alleges that Crysler approved the T.O. for the same erroneous reasons, and that Nowak, Ray and Crysler should have been aware of a then *nine year old* CFA hold on retaliatory transfers of several prisoners – including Dye – who had been plaintiffs in a prior civil rights lawsuit against the MDOC. *Id.* at ¶¶ 45, 57. Dye does not allege that either Nowak, Ray or Crysler were aware of the retaliation he claims to have suffered at the hands of DeAngelo.

### III. ANALYSIS

#### A. *Standard of Review*

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting

affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)).

***B. Warden Booker should be dismissed because he was not personally involved in any alleged constitutional violation***

Dye claims that "Defendant Booker knowingly acquiesced in the unconstitutional conduct of his co-defendants by failing to perform his job and supervise his staff." (Dkt. No. 26, p. 16) In particular, Dye argues that Booker did not take action to stop DeAngelo's alleged

retaliatory removal of Dye from the Warden's Forum Committee. Dye also claims that Booker "participated" in DeAngelo's decision to transfer him by "tacitly or explicitly" approving Dye's transfer. These arguments are unavailing.

Allegations premised on respondeat superior liability are foreclosed in § 1983 actions. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). In *Bellamy v. Bradley*, the Sixth Circuit stated that in order to impose liability on supervisory personnel, a Plaintiff must show more than having brought offending conduct to the attention of supervisory officials:

> In *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Hays*, 668 F.2d at 872-74.

Moreover, a supervisory official's awareness of alleged *illegal* conduct *after the fact* does not provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. den.*, 488 U.S. 1007 (1989). The supervisor must have directly participated in the alleged *wrongful* conduct:

> [A] supervisory official's failure to, control, or train the offending individual is not actionable, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."

*Id*. at 429.

Dye's claim that Booker failed to take corrective action with respect to DeAngelo's removal of him from the Warden's Forum Committee cannot sustain a claim for retaliation. Dye has failed to allege that Booker encouraged or participated in DeAngelo's alleged wrongful conduct. Instead, Dye argues that, as DeAngelo's supervisor, Booker should be liable for failing to act *after* Dye informed Booker that DeAngelo had removed him from the Committee. However, Booker cannot be held liable for his alleged inaction under a theory of respondeat superior.[3]

Furthermore, regarding Dye's contention that Booker directly participated in DeAngelo's transfer decision by "tacitly or explicitly" approving it, Dye's amended complaint is devoid of any allegation that Booker's approval was necessary, or required, to effectuate a transfer. Dye also does not point to a single act of Booker that suggests Booker approved the transfer: he does not reference any document that Booker signed approving the transfer or even any oral statement that Booker may have made regarding the transfer. As such, Dye is again attempting, through purely conclusory allegations, to improperly hold Booker responsible for the actions of his subordinate. Moreover, as more fully discussed below, Booker's purported approval of the transfer is also subject to the defense of qualified immunity.

*C. Dye's claims against Booker, Nowak, Ray and Crysler are subject to the defense of qualified immunity*

Defendants argue that they are entitled to qualified immunity as to Plaintiff's §1983 claims. The doctrine of qualified immunity generally shields state actors from liability under §

---

[3] In addition, as discussed in Section IIIC (below), Dye does not have a constitutional liberty or property interest in his position on the Warden's Forum Committee. *See VanDiver, infra* at p. 519.

1983 based on their discretionary acts. *See Anderson v. Creighton*, 483 U.S. 635, 638-640 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Daugherty v. Campbell*, 935 F.2d 780, 783-84 (6th Cir. 1991). As noted by the Sixth Circuit in *Daugherty*, "[q]ualified immunity entitles its possessor to immunity from suit rather than a mere defense to liability.'" *Id.* at 783 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original)). Thus, government actors have the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin. *Wyatt v. Cole*, 504 U.S. 158, 167 (1992). However, government actors may lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known. *Anderson*, 483 U.S. at 638-39; *Harlow*, 457 U.S. at 818. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819).

Plaintiff bears the burden of defeating this immunity, which is a legal issue to be decided by the Court. *See Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). First, Plaintiff must show that Defendants deprived him of a right protected by the Constitution. Second, this right must be so clearly established that a reasonable official would understand that his or her actions would violate that right. *Saucier v. Katz,* 533 U.S. 194, 194 (2001); *Cooper v. Parrish*, 203 F.3d 937, 951 (6th Cir. 2000). Although *Saucier* mandated a determination of these questions in sequential order, courts are no longer required to do so. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 818 (2009).

With respect to the role of Warden Booker, Deputy Warden Ray, ARUS Nowak and CFA Classification Specialist Crysler in Dye's transfer to TCF, assuming Dye can demonstrate denial of a constitutional right (which it does not appear he can), that right was not clearly established at the time of his transfer. "When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our [C]ircuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our [C]ircuit, and finally to decisions of other circuits." *Daugherty*, 935 F.2d at 784 (citations and quotation marks omitted). The standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified...." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987))(quotation marks omitted). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042. Although it need not be the case that "the very action in question has previously been held unlawful ... in the light of pre-existing law the unlawfulness must be apparent." *Id.* Immunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights. *McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996). However, the doctrine offers no protection to "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In this case, at the time of Dye's transfer, the law of the Supreme Court and our Circuit was as it remains today – a prisoner has no inherent constitutional right to be housed in a particular institution. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Morever, as of 2006, the Sixth Circuit had repeatedly held that transfer from one prison to another prison "cannot rise to

the level of an 'adverse action' [for retaliation claims] because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, No. 01-4033, 2003 U.S. App. LEXIS 21395, at **40-14 (6th Cir. Oct. 20, 2003) (citations omitted) (Dkt. No. 19, Ex. C). Thus, even if Booker, Nowak, Ray and Crysler were aware of DeAngelo's alleged improper motive in deciding to transfer him (which Dye does not allege), in processing or purportedly approving Dye's transfer to a prison of the same security level, they did not – at the very least – violate a clearly established constitutional right of Dye. Therefore, Booker, Nowak, Ray and Crysler are immune from liability for any alleged conduct related to the transfer and Dye's claims against them should be dismissed.

### *D. Dye's remaining retaliation claims against DeAngelo should be dismissed*

This leaves Dye's two remaining claims against DeAngelo. Specifically, Dye alleges that Deangelo: (1) violated his rights under the Fourteenth Amendment right by removing him from the Warden's Forum without due process; and (2) retaliated against him for exercising his First Amendment right of access to the courts by transferring him to TCF.

As to the first issue, Dye "has no liberty or property interest in his position as an inmate representative on the warden's forum." *VanDiver v. Martin*, 48 Fed.Appx. 517, 519 (6th Cir. 2002)(attached to Plaintiff's copy of Report and Recommendation). *See also Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)(reasoning that, although states may, in some instances, adopt prison regulations that create liberty interests protected by the Due Process Clause, those instances are "generally limited to [regulations addressing] freedom of restraint"). Thus, while DeAngelo's removal of Dye from the Warden's Forum Committee may have violated MDOC

policy, it did not rise to the level of a constitutional deprivation. As such, Dye's Fourteenth Amendment claim should be dismissed.

Second, a prisoner's First Amendment retaliation claim must contain three elements: (1) he was engaged in protected conduct; (2) the defendant took an adverse action against him; and (3) that there is a causal connection between the two (i.e., that the adverse action was motivated at least in part by the exercise of the constitutional right). *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc). Dye's retaliation claim fails for lack of both an adverse action and a causal connection.

An adverse action is one capable of deterring a person of ordinary firmness from continuing to engage in that conduct. *Thaddeus-X*, 175 F.3d at 398. Plaintiff has an evidentiary burden to establish that the allegedly retaliatory acts amounted to more than a *de minimis* injury. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). As discussed above, "since prisoners are expected to endure more than the average citizen, and since transfers are common among prisoners, ordinarily a transfer would not deter a person of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). Dye argues that his case falls within the narrow exception to the general rule articulated in *Siggers-El*, because the transfer inhibited his ability to access the courts. However, *Siggers-El* made clear that to fall within the exception, the consequences of the transfer that limit access to the courts must have been reasonably foreseeable at the time of transfer. *Id.* at 702. That was not the case here.

Dye claims he had been "challenging his criminal case in post-conviction proceedings" and that the transfer caused him to lose his relatively high-paying prison job, which he needed to

pay his appellate attorney. (Dkt. No. 26, p. 13) However, Dye does not allege that DeAngelo, or any other defendant, was aware of these proceedings, much less that it was reasonably foreseeable that the transfer would hinder his ability to pay his *pro bono* attorney. (Dkt. No. 26, Ex. B.¶13).[4]

As for the requisite causal connection, Defendants should be granted summary judgment where there are only bare allegations of malice. *Thaddeus-X*, 175 F.3d at 399. Dye cannot show that his post-conviction challenges played any role in the decision to transfer him. To the contrary, Dye's grievance and amended complaint both allege that he was transferred by DeAngelo in retaliation for his activities on the Warden's Forum Committee – not for pursuing any post-conviction relief. (Dkt. No. 10 ¶¶ 34, 28-29.[5] Further, as set forth above, DeAngelo's decision to transfer Dye to a prison at the same security level is also subject to the defense of qualified immunity. For these reasons, Dye's retaliation claim against DeAngelo should also be dismissed.

### E. The Court should decline to exercise supplemental jurisdiction over Dye's remaining state law claims

Finally, to the extent that Dye's amended complaint presents claims under state law, this Court should decline to exercise jurisdiction over the remaining state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental

---

[4] In an affidavit attached to Dye's response, Dye's appellate attorney indicated that he was representing Dye, pro bono, but that Dye was reimbursing him for his costs.

[5] Dye also alleges that the transfer has prevented him from engaging in a host of prisoner advocate activities, but these activities are not "protected conduct." *See VanDiver*, 48 Fed.Appx.at 519 (A prisoner "has no First Amendment right to represent other inmates in presenting their grievances absent a showing that 'the inmate receiving the assistance would otherwise be unable to pursue legal redress.'") (citation omitted).

jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Therefore, it is recommended that any remaining state law claims be dismissed, without prejudice to them being re-filed in a state court of appropriate jurisdiction.

## IV. CONCLUSION

Accordingly, it is recommended that Defendants' second motion for summary judgment be **GRANTED** and Plaintiff's lawsuit be **DISMISSED** in its entirety.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: November 4, 2010

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 4, 2010, by electronic and/or ordinary mail. Plaintiff's copy of the Report and Recommendation was addressed as follows: Paul Dye #173569, Thumb Correctional Facility, 3225 John Conley Drive, Lapeer, MI 48446-2987.

s/Barbara M. Radke<br>
Judicial Assistant